DREW CHEMICAL CORPORATION, Appellant, v FIDELITY AND CASUALTY COMPANY OF NEW YORK, Respondent.—Judgment, Supreme Court, New

---

York County, entered April 13, 1976, dismissing the complaint after trial, is unanimously affirmed, with $60 costs and disbursements of this appeal to respondent. Plaintiff, Drew Chemical Corporation (Drew), the insured, sued the defendant insurance company on a liability insurance policy. Plaintiff Drew manufactures emulsifiers used, among other things, in the making of peanut butter. Plaintiff had at least two kinds of emulsifiers, "Drewmulse 20" having a coconut oil base and "Drewmulse 200" which had a soya oil base. Drew's customer Leavitt, a maker of peanut butter, had used Drewmulse 20 and, apparently, had good experience with it. Drew made up a lot of emulsifier which consisted of 50% Drewmulse 20 and 50% of Drewmulse 200, and it delivered 60,000 pounds thereof to Leavitt under a contract calling for Drewmulse 20. Drew believed that the mixture would work as well as the original Drewmulse 20 that had an all coconut oil base, but it did not tell its customer that it was shipping a mixture that had 50% Drewmulse 20, with a coconut oil base, and 50% Drewmulse 200, with a soya oil base. Leavitt used the mixture; the results were unsatisfactory; the peanut butter did not "stabilize", i.e., the oil separated. As a result, the customers of Leavitt returned the peanut butter and the peanut butter was essentially unmarketable except at a greatly reduced price. Leavitt sued Drew; Drew called on the insurance company to defend; the insurance company at first did defend and then disclaimed. Drew settled with Leavitt and now sues the insurance company for the amount of the settlement, plus the cost of the defense. The trial court, after a nonjury trial, dismissed the complaint. The policy sued on insures against (A) "bodily injury liability"; (B) "property damage—automobile"; and (C) "property damage liability except automotive." While the policy, under coverage (C) in its printed form insures against damages caused by "accident", a rider substitutes the word "occurrence" for "accident" and provides: "The word 'occurrence' includes accident and also means any unforeseen event, or continuous or repeated exposure to harmful conditions which cause physical injury to or physical destruction of tangible property." Plaintiff contends that what happened here falls within the definitions of occurrence and physical injury to tangible property. In our view, the words "any unforeseen event" in the definition of occurrence must be construed with reference to the preceding word "accident" under the rule of *ejusdem generis* so that it must refer to something of the same general kind or class as accident. In another context, (workmen's compensation), the Court of Appeals has said of the meaning of the word accident: "The tests to be applied are those of common understanding as revealed in common speech". *(Matter of Connelly v Hunt Furniture Co.,* 240 NY 83, 85 [1925].) "Common understanding revealed in common speech" is the test, we think, that should be applied here. The policy is basically an ordinary accident liability policy. It is headed "COMPREHENSIVE GENERAL—AUTOMOBILE LIABILITY POLICY—DECLARATIONS." We do not think this policy was intended to cover liability on an ordinary commercial claim between a buyer and seller based on the fact that the goods shipped did not conform to the order. And that is essentially the nature of the claim here involved. Plaintiff also contends that defendant insurance company's lateness in disclaiming precludes it from disputing coverage, on principles of waiver and estoppel. But what is here involved is the question whether this is a risk that the policy covered. As this court observed in *Simpson v Phoenix Mut. Ins. Co.* (30 AD2d 265, 268, affd 24 NY2d 262): "it is settled law that waiver or estoppel may not be invoked to create insurance coverage where none exists under the policy as written". Concur—Silverman, J. P., Evans, Capozzoli and Lynch, JJ.