■ HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellant, v REGENT NURSING HOME et al., Respondents.—In a declaratory judgment action, plaintiff appeals from a judgment of the Supreme Court, Nassau County, entered June 29, 1978, which declared, *inter alia,* that it shall defend and indemnify defendant the Regent Nursing Home in an action entitled "John P. Craig, as Administrator of the Estate of Marion B. Gernon, deceased, against The Regent Nursing Home", to the limits of the insurance policy issued to Regent. Judgment modified, on the law, by (1) adding a provision to the first decretal paragraph thereof permitting the plaintiff to reserve its rights to limit coverage under the insurance policy with the defendant the Regent Nursing Home, pursuant to the policy's exclusion for "Malpractice and Professional Services"; and (2) deleting the words "and indemnify" from the second decretal paragraph thereof. As so modified, judgment affirmed, without costs or disbursements. Defendant, John Craig, as administrator of the estate of Marion Gernon, brought the primary action against defendant the Regent Nursing Home (Regent) to recover damages for the personal injuries suffered by Gernon, now deceased. In the present action plaintiff Hartford Accident and Indemnity Company (Hartford) sought a judicial declaration that it was not obligated, under a policy of liability insurance with Regent, either to defend Regent in the primary action or to pay any judgment which may be rendered against Regent therein. Special Term held that Hartford was required to "afford coverage" to Regent and further provided that Hartford "shall defend and indemnify" Regent in the primary action "to the limits of its policy". The injuries complained of in the primary action were allegedly sustained when the decedent fell from a chair while a patient in the Regent Nursing Home. The bill of particulars alleged, among other things, that Regent "committed malpractice" by failing to properly supervise the decedent and to secure her in her chair. After serving an answer on behalf of Regent, Regent's attorney (who had been

retained by Hartford) made a motion to withdraw from the case on the ground that Hartford had disclaimed all liability to Regent under the liability policy. Hartford's position throughout the primary action and on this appeal is that the primary action is one based on malpractice and is therefore excluded from coverage under the exclusion for "Malpractice and Professional Services" in its policy with Regent. Special Term held that Hartford had waived its right to rely on the malpractice exclusion and was estopped from denying coverage. The basis for this conclusion, as it appears in the court's memorandum decision, was the settlement by Hartford on Regent's behalf, of a prior action against Regent under a policy of liability insurance with an identical exclusion for malpractice and professional services. That action (*Freeman v Regent Nursing Home*, Supreme Ct, Queens County, Index No. 13144/72) stemmed from a similar fall by another of Regent's patients and involved allegations of negligence and improper supervision. Special Term reasoned that Hartford's settlement of the *Freeman* action led one of Regent's partners "to believe that Regent was covered for any fall from a chair by one of its patients, since Hartford did not explain to Regent the basis for settling the *Freeman* case under Regent's policy with Hartford". In our opinion, Special Term correctly refused to declare Hartford free of all liability to Regent in the primary action. However, the finding that Hartford had waived or was estopped from denying coverage under the exclusion for malpractice and professional services goes too far. In our view, Hartford has a contractual duty under the policy of liability insurance to furnish Regent with a defense in the primary action and to provide insurance coverage in accordance with the policy's provisions. This is so because the Craig complaint in the primary action, either taken separately or read in conjunction with the factual allegations in Craig's bill of particulars, gives sufficient notice that the alleged breach of duty may encompass ordinary negligence as well as professional malpractice (see *Morwin v Albany Hosp.*, 7 AD2d 582, 584-585; CPLR 3013). Craig's allegations of bodily injury due to negligence activated Hartford's duty under the policy to defend Regent in the primary action (see *Goldberg v Lumber Mut. Cas. Ins. Co.*, 297 NY 148; *Doyle v Allstate Ins. Co.*, 1 NY2d 439, 443-444). Moreover, if upon a trial of the primary action the case should go to a jury, it should be submitted on framed issues by which the jury may decide whether Regent is to be held liable, if at all, for negligence or malpractice. In this manner it may be determined to what extent, if any, Hartford is obligated to pay damages on Regent's behalf, in light of the exclusion for malpractice and professional services and the other terms of the policy (see *Prashker v United States Guar. Co.*, 1 NY2d 584, 590-591). We find error, therefore, in that portion of the declaratory judgment which requires Hartford to "indemnify" Regent in the primary action by Craig, based upon a finding at Special Term that Hartford had waived its rights under the malpractice and professional services exclusion. The fact that Hartford did not "explain" to Regent the basis for settling the *Freeman* case under the policy therein does not amount to a waiver of the malpractice exclusion. Presumably, such an explanation would have entailed an assertion that the sum paid in settlement should not be construed as payment in satisfaction of any claim of professional malpractice. To expect such an explanation would have been unreasonable, however, since there is no definitive indication in the Freeman complaint, or in the transcript of the stipulation of settlement, that Freeman had adduced any claim of malfeasance beyond the scope of ordinary negligence. As such, the Freeman claim was one which might have been properly asserted under Regent's liability

policy, and Hartford was obligated under the policy to provide Regent with a defense. That the defense in Freeman took the form of a monetary settlement furnishes no ground for a finding that the malpractice exclusion had been waived therein, because it would thereafter have been manifestly impractical, if not impossible, for Hartford to have continued to reserve its rights under the exclusion (cf. *Zaslow v Hartford Acc. & Ind. Co.,* 11 NYS2d 313, 314). Moreover, as the transcript of the stipulation of settlement in the *Freeman* case unequivocally reveals, any waiver by Hartford of its reservation of rights under the malpractice exclusion was meant to operate in *Freeman* only, and nowhere else: "Mr. Zeitlan [attorney for Freeman]: Your Honor, may I put a stipulation on the record? The Court: Of course; go right ahead. Mr. Zeitlan: It is hereby stipulated, consented to and agreed that the above-entitled action be and the same is hereby settled for the sum of $6,500, without interest, costs or disbursements, and that the money will be paid upon the execution of a general release by May A. Freeman, the plaintiff, and by her son, who has testified here, which will be accepted in full payment, your Honor. The Court: So stipulated? Mr. Dwyer [attorney for Regent retained by Hartford]: So stipulated, yes. Mr. Hannah [attorney for Regent retained by Regent for defense of matters not covered by policy with Hartford]: I would like a statement on the record that this settlement is to be paid entirely by the Hartford Accident Indemnity Company, the insurers of the Regent Nursing Home. The Court: Is that stipulated to, Mr. Dwyer? Mr. Dwyer: So stipulated. Mr. Hannah: And that any reservation of rights is waived. Mr. Dwyer: Insofar as it applies to this cause of action, yes. Mr. Hannah: Yes, as far as it applies to this particular case." In sum, we find no evidence of an "intentional relinquishment", or waiver, by Hartford of its rights under the exclusion for malpractice and professional services (see 31 NY Jur, Insurance, § 1513; see, also, *Fuessler v Chautauqua County Patrons' Fire Relief Assn.,* 260 App Div 991). Similarly, to the extent it was implied that Hartford could be required to provide insurance coverage for malpractice damages in the primary action, we disagree with the conclusion at Special Term that Hartford was "estopped from denying that the policy Regent had with it covered accidents similar to that which occurred in the *Freeman* case." While it is true, as Special Term held, that Hartford "never notified Regent that similar claims would not be defended or paid in the future", Regent's partner, Anne Rosato, admitted under cross-examination that Regent's attorney had advised her after the *Freeman* settlement to obtain malpractice insurance because "If you don't have both types of insurance, the insurance company will try to get out from under by saying that one or the other [type of insurance] you don't have, we're not responsible for anything that might occur in the future". Moreover, although Regent's partners may have expected that Hartford would provide full insurance coverage with respect to any accident similar to the accident in the *Freeman* case, such an expectation does not give rise to an estoppel under the circumstances at bar. From the settlement of an unadjudicated claim of negligence, which entailed at best an indeterminate element of malpractice, it can hardly be reasonably inferred that Hartford would in the future *indemnify* Regent in similar situations for all adjudicated damages to the limits of its policy, without regard for the exclusion of coverage for bodily injury due to malpractice (cf. *Zaslow v Hartford Acc. & Ind. Co.,* 11 NYS2d 313, *supra).* If such was the nature of Regent's reliance, then we find it, as a matter of law, to be misplaced (cf. *Rifkin v Stuyvesant Ins. Co. of N. Y.,* 240 App Div 540, 542; *Drew Chem. Corp. v Fidelity & Cas. Co. of N. Y.,* 59 AD2d 612, 613; *Simpson v Phoenix Mut. Ins. Co.,* 30 AD2d 265,

268, affd 24 NY2d 262). Finally, we find no basis in the record for Special Term's finding that a delay by Hartford of "approximately" two months in disclaiming liability to Regent was "unreasonable as a matter of law and estops Hartford from now asserting its non-liability". While such a delay, measured from the time of receipt by the insurer of the summons and complaint in the action against its insured, can give rise to an estoppel, the record is silent as to when such receipt occurred in the instant case. Moreover, the plaintiff in the main action herein has not claimed that he was prejudiced by the alleged delay (cf. *Appell v Liberty Mut. Ins. Co.,* 22 AD2d 906). Furthermore, on this record, there is no basis on which Regent could claim that it was prejudiced in the primary action as a result of any such delay by Hartford (see *Ashland Window & Housecleaning Co. v Metropolitan Cas. Ins. Co. of N. Y.,* 269 App Div 31, 34-36). Damiani, J. P., Titone, Shapiro and Margett, JJ., concur.