OPINION OF THE COURT
Marvin E. Segal, J.
FINDINGS OF FACT
On September 1, 1989, the plaintiff, Fred Tozzi, was injured on the job, in the course of his employment by L & L Painting Company, Inc. (hereafter L & L), as a steel painter, at premises owned by the Long Island Railroad Company. Mr. Tozzi and his wife commenced the primary action against the Long Island Railroad Company seeking damages for personal injuries and loss of consortium in or about July 1990, alleging negligence and violation of Labor Law § 240. In December 1991, the Long Island Railroad Company commenced a third-party action against L & L seeking common-law contribution and indemnity and contractual indemnity. By order dated October 11, 1994, the plaintiff was granted partial summary judgment on the issue of liability under Labor Law § 240 (1). By order dated October 24, 1994, the Long Island Railroad Company was granted summary judgment against L & L, on the ground that (1) L & L was contractually obligated to defend and indemnify the Long Island Railroad Company from and against all claims for bodily injury suffered by L & L’s employees except for those injuries resulting from the Railroad’s negligence, and (2) L & L had failed to rebut the Railroad’s prima facie showing that it was not negligent. In April 1995, L & L commenced the instant fourth-party action against Commerce and Indemnity Insurance Company (hereafter C & I), claiming that C & I owed it both a defense and indemnification pursuant to a commercial general liability policy No. GL971-34-77 issued to L & L by C & I effective April 26, 1989 to April 26, 1990. By order dated August 2, 1995, the fourth-party action was severed. A jury returned a verdict on May 23, 1996 in favor of the plaintiffs, in the primary action, in the sum of $302,000 and judgment in plaintiffs’ favor was entered on May 29, 1996 in the sum of $347,592.50. C & I has alleged, and L & L has not disputed, that its defense in the third-party action was provided by the State Insurance Fund, L & L’s employer’s liability insurer, and it is the State Insurance Fund that is the real party in interest *608 prosecuting the fourth-party action. C & I has alleged on information and belief that the State Insurance Fund has paid the judgment against L & L in the third-party action.
In its answer served in or about May 1995, C & I defended the fourth-party complaint on the ground that endorsement No. 46460, which was approved by the New York State Insurance Department on September 30, 1987, excludes coverage for bodily injuries to employees of the insured arising out of and in the course of employment by the insured (1) whether the insured may be liable as an employer or in any other capacity, and (2) to any obligation to share damages with or repay someone else who must pay damages because of the injury.
L & L now moves for summary judgment declaring that C & I was obligated to defend and indemnify L & L for the contractual indemnification liability L & L owed to the Long Island Railroad Company in the third-party action. C & I cross-moves-for summary judgment dismissing the fourth-party complaint, declaring that C & I does not have an obligation to defend and indemnify L & L and declaring that L & L owes common-law and contractual indemnification to the Long Island Railroad Company in the third-party action.
L & L asserts that it is entitled to a defense and indemnification from C & I in the third-party action on the grounds that
(1) the subject insurance policy is ambiguous and the ambiguity should be construed so as to afford coverage to L & L, and
(2) principles of regulatory estoppel bar C & I from denying coverage.
THE FOLLOWING FACTS ARE UNDISPUTED
(1) The insurance services office (hereafter ISO) general liability policy, form No. CG00 01 11 85, section I, coverage A, generally provides liability for personal injury damages.
(2) Prior to the adoption of endorsement Nos. 45687 and 46460 in 1987, said standard form general liability policy contained an exclusion entitled "exclusion e”, which excluded coverage for bodily injury suffered by the insured’s employee. "Exclusion e”, however, contained an unnumbered concluding paragraph which set forth an exception to this exclusion to the extent that the "exclusion does not apply to liability assumed by the insured under an 'insured contract’ ”.
(3) Pursuant to "exclusion e”, the ISO’s general liability policy form provided coverage to an insured who owed contractual indemnification for a claim arising from bodily injury suffered on the job by an employee of the insured. If the *609 policy issued by C & I to L & L had contained "exclusion e”, C & I clearly would have owed L & L a defense and indemnification in the third-party action. Effective November 1, 1987, endorsement form No. 46460 replaced "exclusion e”. The unnumbered paragraph in "endorsement e” which excepts insured contract liability from exclusion from coverage does not appear in endorsement form No. 46460.
(4) The ISO general liability policy form contains an endorsement entitled "Notice of Occurrence” which sets forth that "[w]here the insured reports an occurrence to the compensation carrier insuring their compensation insurance which later develops into a liability claim, coverage for which is provided by the policy to which this endorsement is attached, failure to report the occurrence to the Company at the time of the occurrence shall not be deemed in violation of general conditions entitled 'Notice to Company’ upon the distinct understanding and agreement however, that the insured just as soon as they are definitely made aware of the facts that a particular occurrence is a liability case rather than a compensation case, shall give notification of the aforesaid occurrence to this Company.” (Emphasis added.)
(5) In addition to deleting the insured contract exception, endorsement No. 46460 adds an additional paragraph, not previously set forth in "exclusion e”, clarifying the exclusion and setting forth that the exclusion applies to past, present or prospective employees and excludes injuries suffered by employees as a result of a wrongful termination.
(6) Endorsement No. 46460 or its equivalent has been approved in 46 States. It was not approved in Texas, was withdrawn in New Jersey and is pending in Vermont. Approval was sought from the Insurance Department of each State based upon the same basic submission letter. Said submission letters advised the various State Insurance Departments that endorsement No. 46460 (Sept. 1987) would replace "exclusion e” of the new simplified ISO general liability policy (form No. CG00 01 11 85). Said letters further advised that endorsement No. 46460 was identical to the approved form No. 45687 (Apr. 1987) for the old nonsimplified ISO policy.
(7) The basic form letter submitted seeking approval of form No. 45687 (Apr. 1987) advised the various State Insurance Departments as follows:
"The primary purpose of this endorsement is:
"1) To promote quicker understanding of the intent of excluding employee bodily injury stated by exclusion (J) in ISO’s General Liability Policy.
*610 "2) To respond to the recent sudden increase in actions brought by employees, particularly in relation to wrongful termination actions.
"3) To be explicit as to the individual employee’s status as either past, present or prospective employees.”
(8) In seeking approval of endorsement form Nos. 45687 and 46460, C & I did not advise the New York State Insurance Department or any other State Insurance Department that it was reducing coverage in that the ISO’s standard general liability policy form would no longer provide coverage for an insured’s contractual obligation to defend and indemnify another party for damages for injuries suffered by the insured’s employee. In fact, C & I advised the Insurance Department of the State of Hawaii in writing as follows: "3. These endorsements are optional. There is no reduction in premium because there is no reduction in coverage. These endorsements merely clarify the exclusions already stated, the insureds are not allowed to buy back the coverage.” The State of Washington was informed in writing that "[w]ith regard to endorsement form no. 46460, our purpose is to clarify the exclusions under Coverage A of ISOCGL. We don’t think this will result in any gap in coverage.”
(9) Insurance Law § 3426 (e) requires notice upon renewal of a covered policy, by the insurer to the insured, of any reduction of coverage or addition of any exclusion. Although L & L did not adduce any proof that C & I renewed any ISOCGL policy subsequent to the effective dates of the adoption of endorsement form No. 45687 in the old form and endorsement form No. 46460 in the new form, C & I did not demonstrate that it ever notified any policyholder of any reduction in coverage incident to the replacement of "exclusion e” by said endorsements. The policy issued to L & L by C & I effective April 26, 1989, was a new policy, and C & I was not required by Insurance Law § 3426 to afford L & L any statutory notice relating to the deletion of the insured contract coverage.
(10) In June 1992, in Joy Technologies v Liberty Mut. Ins. Co. (187 W Va 742, 421 SE2d 493), the Supreme Court of Appeals of West Virginia held that a commercial liability policy issued by Liberty Mutual to Joy afforded Joy coverage for pollution which was not "sudden”, despite an exclusion in the insurance contract excluding coverage for pollution claims, except where the release of the pollutant was sudden and accidental, on the ground that in obtaining Insurance Department approval of the subject exclusion, the insurer had unequivocally repre *611 sented that the proposed exclusion was only a classification of the existing coverage which had excluded coverage only for expected or intentional pollution.
(11) In July 1993, in Morton Intl. v General Acc. Ins. Co. (134 NJ 1, 72-75, 629 A2d 831, 872-873, cert denied sub nom. Insurance Co. v Morton Intl., 512 US 1245), the Supreme Court of New Jersey, citing the aforesaid West Virginia decision, and applying what it labeled "regulatory estoppel”, reached the same result as the West Virginia court, refusing to enforce the literal meaning of the same pollution exclusion provision and holding that the insurer was estopped from asking the court to given the provision an interpretation contrary to the representations as to the import of the clause made by the insurer to the New Jersey Department of Insurance and the Insurance Departments of other States including West Virginia.
(12) L & L contends, that based on the authority of the West Virginia and New Jersey decisions, C & I should be estopped from asking this court to interpret endorsement No. 46460 as deleting the insured contract exception to the exclusion for bodily injury suffered by the insured’s employee, on the ground that C & I obtained the approval of said endorsement without advising the New York State Department of Insurance, or such department of any other State, that the replacement of "exclusion e” by endorsement No. 46460 deleted insured contract coverage.
(13) Other courts have, in deciding the same issue, refused to apply the principle of estoppel on the grounds (a) that estoppel cannot expand or create coverage, and (b) that a contract which is clear and unambiguous on its face must be enforced according to its terms without any consideration of extrinsic evidence (see, Federated Mut. Ins. Co. v Botkin Grain Co., 64 F3d 537, 541 [10th Cir 1995]; Transamerica Ins. Co. v Duro Bag Mfg. Co., 50 F3d 370 [6th Cir 1995]; Independent Petrochemical Corp. v Aetna Cas. & Sur. Co., 842 F Supp 575, 582 [DC 1994]).
(14) This is a case of first impression in the State of New York. Neither party has cited, nor has this court located any published decision in this State dealing with the principle of regulatory estoppel. The Appellate Division, Second Department was asked to apply the concept of regulatory estoppel in Northville Indus. Corp. v National Union Fire Ins. Co. (218 AD2d 19, 34 [1995]), but declined to consider the issue as it had not been raised at trial. Further, the Supreme Court of the United States has denied certiorari in Morton Intl. v General Acc. Ins. Co. (supra).
*612 CONCLUSIONS OF LAW
There are two well-settled, general principles of law applicable to the instant action, to wit: (1) a clear and unambiguous agreement must be enforced according to its terms without reliance on extrinsic or parol evidence (see, Wells v Shearson Lehman/Am. Express, 72 NY2d 11, 19; W.W.W. Assocs. v Giancontieri, 77 NY2d 157; Caporino v Travelers Ins. Co., 62 NY2d 234, 239), and (2) estoppel cannot be invoked to create insurance coverage (see, Zappone v Home Ins. Co., 55 NY2d 131; Wausau Ins. Cos. v Feldman, 213 AD2d 179; Reinhart v Terra Nova Ins. Co., 124 AD2d 795). Neither of these principles, standing alone or applied in conjunction, necessarily precludes the application of the doctrine of regulatory estoppel in a proper case.
The classic statement of the rule of judicial estoppel is found in Horn v Bennett (253 App Div 630, 631): "Parties in court are not permitted to assume inconsistent positions in the trial of their causes. If they accept the benefit of a judgment they are estopped from taking a contradictory position either on the same trial or in another suit which grows out of the judgment in the first.” As set forth by the Appellate Division, Second Department: "Judicial estoppel, or the doctrine of inconsistent positions, precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed (see, Prudential Home Mtge. Co. v Neildan Constr. Corp., 209 AD2d 394; Piedra v Vanover, 174 AD2d 191, 197; Environmental Concern v Larchwood Constr. Corp., 101 AD2d 591, 594) * * * The doctrine is invoked to estop parties from adopting such contrary positions because the judicial system 'cannot tolerate this "playing 'fast and loose with the courts’ ” ’ (Environmental Concern v Larchwood Constr. Corp., supra, at 594, quoting Scarano v Central Ry. Co., 203 F2d 510, 513).” (Ford Motor Credit Co. v Colonial Funding Corp., 215 AD2d 435, 436; see also, Shepardson v Town of Schodack, 195 AD2d 630, affd 83 NY2d 894). The purpose of the application of the doctrine of judicial estoppel is to preserve the integrity of judicial proceedings by prohibiting the successive assertion of factually contradictory statements as the truth (Developments — Res Judicata, 65 Harv L Rev 817, 823-824).
The State of New York recognizes only a limited exception to the general rule against the creation of insurance coverage through estoppel, where an insurer has undertaken the defense *613 of an action on behalf of a noninsured and has thereby prejudiced said noninsured’s right to control the defense of the action (see, Schiff Assocs. v Flack, 51 NY2d 692; O’Dowd v American Sur. Co., 3 NY2d 347; General Acc. Ins. Co. v United States Fid. & Guar. Ins. Co., 193 AD2d 135; Corcoran v Abbott Sommers, Inc., 143 AD2d 874), or the insurer has provided a defense and indemnification in a prior action such that the insurer demonstrated an "intentional relinquishment” of an insurance policy exclusion (see, Hartford Acc. & Indem. Co. v Regent Nursing Home, 67 AD2d 935, 937). In such case, the detrimental reliance by the insured is clear and is a prerequisite for the application of the estoppel doctrine (see, Schiff Assocs. v Flack, supra, at 699).
Nevertheless, detrimental reliance is not a prerequisite to the applicability of judicial estoppel as the intent of said doctrine is not to protect the individual litigant, but to protect the integrity of the judicial system itself. Accordingly, the court holds that in an appropriate case (1) a litigant may utilize the doctrine of estoppel to prove that an insurer should be estopped from enforcing a clear and unambiguous agreement according to its terms on the ground that in a prior proceeding the insurer obtained a judgment by means of an unequivocal assertion of a contrary interpretation of a contractual term in said agreement, and (2) that the invocation of judicial estoppel may create insurance coverage.
The doctrine of estoppel may be applied in this State to estop a party in a litigation from making a factual assertion contrary to a factual assertion made in the course of an administrative proceeding (see, e.g., Inter-Power of N. Y. v Niagara Mohawk Power Corp., 208 AD2d 1073, 1075; Matter of Union Indem. Ins. Co., 200 AD2d 99, lv denied 84 NY2d 1026 [1995]; Kasmarski v Terranova, 115 AD2d 640). The court finds, however, that the application of estoppel is not proper in the instant action. The extensive regulatory proceedings, including hearings, conducted incident to the adoption of the insurance exclusion endorsements, which were the subject matter of the decisions in Morton Intl. v General Acc. Ins. Co. (134 NJ 1, 629 A2d 831, supra) and Joy Technologies v Liberty Mut. Ins. Co. (187 W Va 742, 421 SE2d 493, supra), relied upon by L & L, and the nature and extent of the representations made by the insurers during the course of those regulatory proceedings, distinguish the aforesaid decisions. In the instant action, the subject endorsement was adopted in the State of New York by a single letter request setting forth the proposed amendment. *614 No hearings were conducted. No regulatory proceedings of any other nature were conducted requiring the insurer’s presence. The insurer did not submit a sworn written statement or make any factual representation under oath. The insurer never affirmatively addressed the issue of insured contract coverage and never unequivocally represented that endorsement No. 46460 provided "insured contract” coverage.
If an obligation is to be imposed upon insurers to affirmatively advise the various State Departments of Insurance as to coverage changes incident to proposed endorsement form amendments, and if penalties are to be imposed for the failure to comply, such obligations and penalties must be imposed legislatively and not judicially. Absent the existence of prior regulatory proceedings analogous to the judicial prosecution of an action, it would be improper for the court to utilize the doctrine of "regulatory” estoppel in the instant action. In determining whether to apply estoppel, the court must examine the nature and extent of the regulatory proceedings and the representations made by the insurer during the course of such proceedings.
Having declined to apply the doctrine of estoppel, the court must still determine whether the subject insurance agreement is or is not clear and unambiguous. If it is clear and unambiguous, it must be enforced according to its terms. If it is ambiguous, the court may consider extrinsic evidence, such as the letters to the various Departments of Insurance and the deposition testimony and affidavits submitted herein, in deciding whether or not the subject policy provides coverage under an "insured contract”.
The applicable rules of law are well settled. Clear and unambiguous contractual provisions must be enforced according to their plain and ordinary meaning (Sanabria v American Home Assur. Co., 68 NY2d 866, 868; National Union Fire Ins. Co. v Pardo, 208 AD2d 702, 703). "Where the provisions of an insurance contract are clear and unambiguous, the courts should not strain to superimpose an unnatural or unreasonable construction” (Goldman & Sons v Hanover Ins. Co., 80 NY2d 986, 987; Commissioners of State Ins. Fund v Insurance Co. of N. Am., 80 NY2d 992). The legal test for ambiguity is whether "the language in the insurance contract is * * * susceptible of two reasonable interpretations” (State v Home Indem. Co., 66 NY2d 669, 671). An insurance policy must be read as a whole with effect given to every provision (Mazzaferro v RLI Ins. Co., 50 F3d 137 [2d Cir 1995]). In constructing *615 an endorsement to an insurance policy, the endorsement and the policy must be read together (County of Columbia v Continental Ins. Co., 83 NY2d 618, 628). In the instant action where endorsement No. 46460 has replaced "exclusion e”, the terms of "exclusion e” may not be considered in determining whether the subject policy is ambiguous (see, Ramirez v United States Fid. & Guar. Co., 133 AD2d 146).
Endorsement No. 46460 in and of itself is not ambiguous (Rosato v Koch Erecting Co., 865 F Supp 104 [ED NY 1994]; see also, North Riv. Ins. Co. v United Natl. Ins. Co., 81 NY2d 812). The question remains as to whether or not the policy as a whole is ambiguous as to coverage under an "insured contract”, when endorsement No. 46460 is read in the context of the entire policy.
L & L urges (1) that the "Notice of Occurrence” endorsement, set forth hereinabove at length in paragraph No. 4 of the undisputed facts is part of the subject policy of insurance, (2) that every clause of any insurance policy must be given some meaning and read in determining whether an ambiguity exists, and (3) that one reasonable interpretation of said endorsement is that the subject policy provides "insured contract” coverage because the endorsement would be rendered meaningless unless it is interpreted as providing for special notice considerations in those instances when a workers’ compensation claim of an employee becomes a liability claim by virtue of an "insured contract”. C & I disputes that L & L’s interpretation is the only reasonable interpretation of said endorsement and contends that the endorsement could apply where a claim for workers’ compensation is made by an injured person who is found, at a later date, not to be an employee of the insured.
As set forth above, the legal test in determining ambiguity is whether or not the insurance contract is susceptible of two reasonable interpretations. Here, the policy provides coverage for bodily injury, endorsement No. 46460 excludes coverage for bodily injury suffered by an employee and the notice of occurrence endorsement affords special notice provisions for L & L when an occurrence reported to the compensation carrier becomes a liability claim. Read together, these provisions create an ambiguity as to whether or not the policy provides "insured contract” coverage.
The law applicable to ambiguity is clear. Any ambiguity must be construed liberally in favor of the insured and strictly against the insurer (Handelsman v Sea Ins. Co., 85 NY2d 96; *616 Lavanant v General Acc. Ins. Co., 79 NY2d 623), particularly where the interpretation preferred by the insurer would exclude coverage (see, Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., 60 NY2d 390; Breed v Insurance Co. of N. Am., 46 NY2d 351). Where an insurer is attempting to interpret its policy to exclude coverage, the insurer has the burden of proving that its interpretation is the only reasonable interpretation (Moneta Dev. Corp. v Generali Ins. Co., 212 AD2d 428; Sacks v Hartford Ins. Co., 68 AD2d 48; Sea Ins. Co. v Westchester Fire Ins. Co., 51 F3d 22 [2d Cir 1995]).
Here, C & I has not met that burden. C & I has failed to prefer any proof that it advised any State Insurance Department that endorsement No. 46460 was intended to delete "insured contract” coverage. C & I failed to profer any proof that it effectuated any rate reduction incident to the deletion of such coverage, or that it notified any renewing insured of the deletion of such coverage. C & I failed to provide any reasonable explanation as to why the endorsement entitled "Notice of Occurrence” is attached to L & L’s policy unless the policy was intended to provide coverage under an "insured contract”.
Accordingly, the motion by C & I is denied except to the extent that C & I is granted judgment declaring that L & L owes both common-law and contractual indemnification to the Railroad. The motion by L & L is granted.