21-2570(L)
*Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued:    February 9, 2023
Decided: March 22, 2023

Nos. 21-2570(L), 21-2618(Con)

COVINGTON SPECIALTY INSURANCE COMPANY,

*Plaintiff–Counter-Defendant–Appellee,*

v.

INDIAN LOOKOUT COUNTRY CLUB, INC.,

*Defendant–Counter-Claimant–Appellant,*

FRANCIS POTTER, INDIVIDUALLY, DBA INDIAN
LOOKOUT COUNTRY CLUB, INC., ANTOINETTE
POTTER, INDIVIDUALLY, DBA INDIAN LOOKOUT
COUNTRY CLUB, INC., HARLEY RENDEZVOUS
CLASSIC, INC.,

*Defendants–Counter-Claimants–*
*Counter-Defendants–Appellants.*[*]

Appeal from the United States District Court for
the Northern District of New York
No. 20-cv-613, Glenn T. Suddaby, *Judge.*

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Before:       KEARSE, JACOBS, and SULLIVAN, *Circuit Judges*.

Insureds – who operate an annual motorcycle rally in Pattersonville, New York (the "Harley Rendezvous") – appeal from the district court's entry of summary judgment in favor of Covington Specialty Insurance Company ("Covington") in this insurance-coverage dispute. Specifically, the parties disagree as to Covington's duties, under a general commercial liability policy issued to the Insureds (the "Policy"), to defend and indemnify the Insureds against personal-injury claims asserted in a separate, state-court action by two motorcycle riders who were struck by another attendee's automobile at the Harley Rendezvous. The district court (Suddaby, *J.*) found that a provision of the Policy (the "Absolute Auto Exclusion") unambiguously excluded liability coverage for automobile accidents, regardless of whether the Insureds themselves owned or operated the vehicle at issue.

On appeal, the Insureds argue that the district court was bound by – and erroneously failed to follow – a case in which a New York intermediate appellate court found ambiguity in a similarly worded exclusion provision in a different insurance policy. *See Essex Ins. Co. v. Grande Stone Quarry, LLC*, 918 N.Y.S.2d 238 (3d Dep't 2011). As explained below, however, we find that *Grande Stone Quarry* is inapposite here, and that countless other decisions by New York courts support the district court's reading of the Absolute Auto Exclusion. As a result, we **AFFIRM** the judgment of the district court.

AFFIRMED.

> ERIC D. SUBEN, Traub Lieberman Straus & Shrewsberry LLP, Hawthorne, NY, *for Plaintiff–Counter-Defendant–Appellee Covington Specialty Insurance Company*.
>
> CAROLYN B. GEORGE, Cooper, Erving & Savage, LLP, Albany, NY, *for Defendant–Counter-Claimant–Appellant Indian Lookout Country Club, Inc.*

2

MATTHEW J. KELLY, Roemer Wallens Gold & Mineaux, LLP, Albany, NY, *for Defendants–Counter-Claimants–Counter-Defendants–Appellants Francis Potter, Antoinette Potter, Harley Rendezvous Classic, Inc.*

PER CURIAM:

Francis and Antoinette Potter, Indian Lookout Country Club, Inc. (the "Club"), and Harley Rendezvous Classic, Inc. (collectively, the "Insureds") – who operate an annual motorcycle rally in Pattersonville, New York (the "Harley Rendezvous," or the "Rendezvous") – appeal from the district court's entry of summary judgment in favor of Covington Specialty Insurance Company ("Covington") in this insurance-coverage dispute. Specifically, the parties disagree as to Covington's duties, under a general commercial liability policy issued to the Insureds (the "Policy"), to defend and indemnify the Insureds against personal-injury claims asserted in a separate state-court action brought by two motorcycle riders (the "Riders") who were struck by an automobile driven by someone attempting to attend the Harley Rendezvous. The district court found that a provision of the Policy (the "Absolute Auto Exclusion") made "unambiguously clear that [liability coverage for] automobile accidents [is]

3

excluded" from the Policy, regardless of "whether . . . the [I]nsured[s] themselves owned [or] operated . . . the vehicle at issue."  J. App'x at 10, 12.

On appeal, the Insureds argue that the district court was bound by – and erroneously failed to follow – a case in which a New York intermediate appellate court found ambiguity in a similarly worded exclusion provision of a different insurance policy.  *See Essex Ins. Co. v. Grande Stone Quarry, LLC*, 918 N.Y.S.2d 238 (3d Dep't 2011).   As explained below, however, *Grande Stone Quarry* is inapposite here, and numerous other decisions by New York courts support the district court's reading of the Absolute Auto Exclusion.   As a result, we affirm the judgment of the district court.

## I.   BACKGROUND

### A.   Facts

At the heart of this appeal is the Policy, which Covington issued to the Insureds for the period of July 11, 2018 to July 11, 2019.   The Policy provides that Covington (1) "will pay those sums that the [Insureds] become[] legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies," and (2) "will have the right and duty to defend the [Insureds] against any suit seeking [such] damages," but "will have no duty to defend the

4

[Insureds] against any suit seeking damages for bodily injury or property damage to which this insurance does not apply." J. App'x at 119 (internal quotation marks omitted). The Policy contains a standard exclusion specifying that "[t]his insurance does not apply" to "[b]odily injury . . . arising out of the . . . use . . . of any aircraft, auto[,] or watercraft owned or operated *by . . . any insured*." *Id.* at 120, 122 (emphasis added; internal quotation marks omitted).

The Absolute Auto Exclusion, however, "delete[s]" and "replace[s]" that standard exclusion with a disclaimer of coverage for *any* "[b]odily injury . . . arising out of or resulting from the . . . use . . . of any aircraft, auto[,] or watercraft." *Id.* at 153 (internal quotation marks omitted). Unlike the standard exclusion it replaces, the Absolute Auto Exclusion contains no language conditioning its disclaimer on whether the "aircraft, auto[,] or watercraft" in question was "owned or operated by . . . an[] insured." *Id.* at 122 (internal quotation marks omitted). Moreover, the Absolute Auto Exclusion clarifies that "[t]his exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision . . . or monitoring of others by that insured, if the occurrence which caused the bodily injury . . . involved the . . . use . . . of any aircraft, auto[,] or watercraft." *Id.* at 153 (internal quotation marks omitted).

5

This dispute arises out of a June 21, 2019 automobile-motorcycle collision between parties attempting to attend the Harley Rendezvous. The Riders were entering the premises of the Club to attend the Rendezvous when the driver of a Kia automobile (the "Driver") – also "attempt[ing] to enter [the Rendezvous] at [the Club's] premises" – allegedly "failed to yield the right of way and turned her vehicle left into the direct path of the [Riders], causing a severe collision and injuries to both [Riders]." J. App'x at 188 ¶ 14. The Riders then commenced a personal-injury action against both the Driver and the Insureds in state court (the "Underlying Action"), alleging that the Driver was negligent in the operation of her automobile and that the Insureds were negligent in their supervision of the vehicular traffic entering and exiting the Club's premises for the Rendezvous.

In December 2019, the Insureds notified Covington of the Underlying Action in a letter stating their "belie[f]" that the "[P]olicy . . . would cover" their defense and indemnity against the Riders' "claim[s]." *Id.* at 193. Later that month, Covington responded with a letter "denying coverage for the Underlying Action based on . . . the 'Absolute Auto . . . Exclusion' endorsement" contained in the Policy. *Id.* at 195. Covington thus "advised that [it] will not appoint counsel to defend [the Insureds]," "pay or contribute to [their] defense costs," or "pay

6

[any] judgment, verdict, or settlement against [them]." *Id.* at 196. Upon learning that the Riders had moved for a default judgment against the Club in the Underlying Action, however, Covington "assign[ed] defense counsel to represent [the Club]" for the limited "purpose of opposing the default motion." *Id.* at 249. In advising the Insureds of this putatively "gratuitous" defense, *id.* at 280, Covington emphasized that "it is to be strictly understood that [Covington] does not waive [any of] the grounds for disclaiming coverage as previously asserted," including that "[t]he Absolute Auto Exclusion excludes coverage for the Underlying Action because it arises out of an auto accident," *id.* at 249–50.

## B.    Procedural History

In June 2020, Covington commenced this declaratory-judgment action in the district court, seeking (1) a declaration that, under the Absolute Auto Exclusion (and other Policy endorsements not relevant to this appeal), it need not indemnify the Insureds for any liability established in the Underlying Action; and (2) recoupment of the costs it had incurred in providing the Club with a putatively gratuitous defense in the Underlying Action. The Insureds then filed counterclaims seeking declarations that, under the Policy, Covington was obligated to defend and indemnify them in the Underlying Action.

7

In February 2021, Covington moved for summary judgment on the ground that the Absolute Auto Exclusion precludes coverage for the Insureds' liabilities in the Underlying Action, as the Underlying Action had undisputedly arisen out of an automobile accident. The Insureds opposed the motion, asserting ambiguity as to whether the Absolute Auto Exclusion (like the standard exclusion it replaces) applies only to bodily injuries caused by automobiles owned or operated *by insured parties*, and arguing that under New York law, such ambiguity must be construed in the Insureds' favor. On September 21, 2021, the district court granted summary judgment in favor of Covington.

The Insureds timely appealed.

## II.  STANDARD OF REVIEW

"We review de novo a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021). "Summary judgment is required if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Acct. L7N01967*, 731 F.3d

8

189, 192 (2d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). Likewise, "[w]e review de novo the district court's interpretation and application of state law." *Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130, 134 (2d Cir. 2018) (citation and alteration omitted).

## III. DISCUSSION

The Insureds' sole argument on appeal is that the district court erred in finding the language of the Absolute Auto Exclusion to *unambiguously* preclude coverage here. That was error, according to the Insureds, because a New York intermediate appellate court once found ambiguity in a similarly worded exclusion provision of a different insurance policy. *See Essex Ins. Co. v. Grande Stone Quarry, LLC*, 918 N.Y.S.2d 238 (3d Dep't 2011). We disagree.

It is true that since the district court was "sitting in diversity," it was bound to "apply the substantive law of the forum [s]tate" – here, New York. *Principal Nat'l Life*, 884 F.3d at 134 (citation omitted). It is also true that since "the New York Court of Appeals . . . has not ruled on th[e] issue" in dispute here, the district court was "bound . . . to apply the law as interpreted by New York's intermediate appellate courts . . . unless [it were to] find persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." *AEI Life LLC v. Lincoln*

9

*Benefit Life Co.*, 892 F.3d 126, 139 n.15 (2d Cir. 2018) (citation omitted). Here, however, the district court was not bound to follow the Third Department's decision in *Grande Stone Quarry* – indeed, it was correct in declining to follow that decision – for the simple reason that *Grande Stone Quarry* did not speak to the issue disputed by Covington and the Insureds.

Seizing on the fact that "the words 'any insured' are merely omitted" by the Absolute Auto Exclusion – rather than affirmatively replaced with words such as "any insured or any other persons" – the Insureds argue that the Absolute Auto Exclusion is ambiguous as to whether it "only applie[s] to . . . autos used by [the Insureds] and their employees," or also applies to automobiles used by others (such as the Driver in the Underlying Action). Potter Br. at 13–14. In making this argument, the Insureds double down on the Third Department's opinion in *Grande Stone Quarry*, which found similar wording to be ambiguous as to a *different* question: whether the similarly worded exclusion "extinguished" liability coverage "for claims resulting from third parties['] using such vehicles when injured *by a condition of the insured's property*." 918 N.Y.S.2d at 241 (emphasis

10

added).[1]  Because *Grande Stone Quarry* did not address the issue before the district court here – that is, whether the Absolute Auto Exclusion unambiguously extinguishes liability coverage as to third parties injured *by another third party's vehicle* – it has minimal value as an "indicator[] of how the [New York] Court of Appeals would decide" that issue.  *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) (internal quotation marks omitted), *certified question answered*, 11 N.Y.3d 80 (2008).

Instead, as noted above, the district court's "task" here was simply "to determine how the New York Court of Appeals would decide" the issue, *id.* – "giv[ing] the fullest weight to" that court's *own* "pronouncements," *Runner v. N.Y. Stock Exch., Inc.*, 568 F.3d 383, 386 (2d Cir.) (internal quotations omitted), *certified question answered*, 13 N.Y.3d 599 (2009), as well as "proper regard to the decisions of [New York's] lower courts" and "the decisions of federal courts construing

---

[1] Along the way, the Third Department acknowledged that the First Department had recently found such language to *unambiguously preclude coverage* on facts similar to those at issue in *Grande Stone Quarry*.  *See* 918 N.Y.S.2d at 240 (citing *DMP Contracting Corp. v. Essex Ins. Co.*, 907 N.Y.S.2d 487, 489–90 (1st Dep't 2010)).  Thus, even if *Grande Stone Quarry* and *DMP Contracting* were directly on point here, the district court would have been free to "choose . . . which" of those "two conflicting decisions of different Appellate Divisions . . . is more in line with the decisions of the New York Court of Appeals."  *United States v. Novsam Realty Corp.*, 125 F.2d 456, 457 (2d Cir. 1942).

11

[relevant New York] law," *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 199 (2d Cir. 2003) (internal quotation marks omitted). Here, the record reflects that the district court carried out that task soundly and carefully. Indeed, for substantially the same reasons as stated in the district court's well-reasoned decision, we conclude that under New York law, the Absolute Auto Exclusion unambiguously precludes coverage of the Insureds' defense and indemnity in the Underlying Action.

"[W]hen[] an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984) (internal quotation marks omitted). Thus, "ambiguities in an insurance policy['s] . . . exclusionary clause[s]" are "to be construed against the insurer." *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398 (1983). However, "unambiguous provisions must be given their plain and ordinary meaning," *Sanabria v. Am. Home Assur. Co.*, 68 N.Y.2d 866, 868 (1986), and "courts are not free to disregard the plain meaning of the policy language to find an ambiguity where none exists," *Conlon v. Allstate Vehicle & Prop. Ins. Co.*, 58 N.Y.S.3d 495, 498 (2d Dep't 2017) (internal quotation marks omitted). As a corollary, New York courts have repeatedly and consistently ruled that

12

insurance contract language that has been replaced is of no effect. Courts must determine whether "the language of the disputed [replacing] provision itself is clear and unambiguous," and if it is, "whether any ambiguity arises when it is read in conjunction with the rest of the policy." *Monteleone v. Crow Const. Co.*, 673 N.Y.S.2d 408, 411 (1st Dep't 1998); *accord Budofsky v. Hartford Ins. Co.*, 556 N.Y.S.2d 438, 441 (Sup. Ct. Suffolk Cnty. 1990); *Rhinebeck Bicycle Shop, Inc. v. Sterling Ins. Co.*, 546 N.Y.S.2d 499, 501–02 (3d Dep't 1989); *Ramirez v. U.S. Fid. & Guarantee Co.*, 519 N.Y.S.2d 144, 146 (2d Dep't 1987); *Sayreville Seaport Assocs. Urb. Renewal, L.P. v. Indian Harbor Ins. Co.*, __ N.Y.S.3d __, 2023 WL 1455581, at *1 (1st Dep't Feb. 2, 2023); *Total Concept Carpentry, Inc. v. Tower Ins. Co. of N.Y.*, 943 N.Y.S.2d 473, 474 (1st Dep't 2012); *Handlebar Inc. v. Utica First Ins. Co.*, 735 N.Y.S.2d 249, 251 (3d Dep't 2002); *see also Tozzi v. Long Island R.R. Co.*, 651 N.Y.S.2d 270, 276 (Sup. Ct. Nassau Cnty. 1996) ("[W]here [an] endorsement . . . has replaced [a standard exclusion] . . . , the terms of [the replaced exclusion] . . . may not be considered in determining whether the subject policy is ambiguous.") (internal quotation marks omitted), *aff'd on other grounds*, 668 N.Y.S.2d 102 (2d Dep't 1998).

This line of precedent squarely forecloses the Insureds' argument that the Absolute Auto Exclusion can be rendered ambiguous by reference to the standard

exclusion that it "delete[s]" and "replace[s]." J. App'x at 153. In other words, we do not assess the ambiguity of the Absolute Auto Exclusion by looking to the limiting language of the standard exclusion – "[t]his insurance does not apply to . . . [b]odily injury arising out of the . . . use . . . of any . . . auto . . . *owned or operated by . . . any insured*," *id.* at 120, 122 (emphasis added) – and then asking whether the Absolute Auto Exclusion is adequately forceful or specific in its repudiation of that language. Instead, we must analyze the language of the Absolute Auto Exclusion *on its own terms*, and ask whether its "plain and ordinary meaning," *Sanabria*, 68 N.Y.2d at 868, "clear[ly] and unmistakabl[y]" excludes liability coverage for injuries arising out of the use of an automobile owned and operated by someone other than an insured party, *Seaboard Sur. Co.*, 64 N.Y.2d at 304 (citation omitted).

Like the district court below, we are persuaded by – and defer to – the reasoning of New York courts that have answered that question in the affirmative. For instance, the First Department has held that an exclusion of liability coverage for "bodily injury . . . arising out of . . . the ownership [or] use . . . of any auto" unambiguously applies "whether or not it is the insured who owned [or] used . . . the subject automobile," reasoning that the plain meaning of its language "focuses on the connection between a vehicle and the injury, not between a vehicle and the

14

insured." *DMP Contracting Corp.*, 907 N.Y.S.2d at 489–90. Similarly, the Second Department has found "no ambiguity as to the plain and ordinary meaning of [an] auto exclusion" that "stated that the insurer was not obligated to 'pay for bodily injury, property damage, personal injury or advertising injury that arises out of the ownership, operation, [or] use . . . of an auto.'" *Ruge v. Utica First Ins. Co.*, 819 N.Y.S.2d 564, 565 (2d Dep't 2006) (alteration omitted). Following those courts, we hold that under New York law, the Absolute Auto Exclusion's disclaimer of coverage for "[b]odily injur[ies] . . . arising out of" the "use . . . of any . . . auto," J. App'x at 153 (internal quotation marks omitted), unambiguously precludes coverage for the Underlying Action.

Indeed, we find this case to be even more straightforward than those decided by the First and Second Departments in *DMP Contracting* and *Ruge*. Here, after all, the Policy is explicit in clarifying that the Absolute Auto Exclusion "applies even if the claims against any insured allege negligence . . . in the supervision . . . or monitoring of others by that insured, if the occurrence which caused the bodily injury . . . involved the . . . use . . . of any . . . auto." *Id.* at 153 (internal quotation marks omitted). There can be no doubt that such language covers the Riders' underlying claim that the Insureds "negligently . . . failed" to

15

"provide traffic control" for the "multiple thousands of motorcyclists" and "motorists traveling to and from . . . the entrance of the [Harley Rendezvous]." *Id.* at 189–90 ¶¶ 20, 22–23.

## IV.   CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.