*Elliott v. Cartagena, et al.*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued: March 31, 2023
Decided: October 17, 2023

No. 22-255

ERIC A. ELLIOTT, AKA FLY HAVANA,

*Plaintiff-Appellant,*

*v.*

JOSEPH ANTHONY CARTAGENA, AKA FAT JOE, KARIM KHARBOUCH, AKA FRENCH MONTANA, SHANDEL GREEN, AKA INFARED, REMINISCE SMITH MACKIE, AKA REMY MA, EDWARD F. DAVADI, JR., AKA EDSCLUSIVE, JOEY AND RYAN MUSIC, EXCUSE MY FRENCH MUSIC, EXCUSE MY FRENCH MUSIC II, MR. GREEN MUSIC, REMYNISCE MUSIC, UNIVERSAL MUSIC-Z TUNES LLC, DBA UNIVERSAL MUSIC Z SONGS, WARNER-TAMERLANE PUBLISHING CORP., WARNER/CHAPPELL MUSIC, INC., SONGS OF UNIVERSAL INC., ROC NATION LLC, ROC NATION MANAGEMENT LLC, SNEAKER ADDICT TOURING LLC, TERROR SQUAD PRODUCTIONS, INC., TERROR SQUAD ENTERTAINMENT, RNG (RAP'S NEW GENERATION), EMPIRE DISTRIBUTION, INC., BMG RIGHTS MANAGEMENT (US) LLC, DBA BMG PLATINUM SONGS US,

*Defendants-Appellees,*

KOBALT SONGS MUSIC PUBLISHING, KOBALT MUSIC PUBLISHING AMERICA, INC., REACH GLOBAL INC., SONY/ATV ALLEGRO, FIRST N PLATINUM PUBLISHING, SONY/ATV TUNES LLC, CUTS OF REACH MUSIC, SONGS OF REACH GLOBAL, FIRST N GOLD PUBLISHING, INC., REACH MUSIC PUBLISHING INC., SONY/ATV MUSIC PUBLISHING, INC., MARCELLO VALENZANO, AKA COOL, ANDRE LYON, AKA DRE,

DADE CO. PROJECT MUSIC, INC., PO FOLKS MUSIC,

*Defendants.*

---

Appeal from the United States District Court
for the Southern District of New York
No. 1:19CV01998, Naomi Reice Buchwald, *Judge*.

---

Before:      NARDINI AND MERRIAM, *Circuit Judges.*[*]

Plaintiff-appellant Eric A. Elliott alleges that he co-created the song "All the Way Up," but that he has not been properly credited or compensated for his contribution. He filed this action in the United States District Court for the Southern District of New York (Buchwald, *J.*), asserting claims under the Copyright Act, 17 U.S.C. §101, et seq., as well as various tort claims. Defendants-appellees maintain that Elliott assigned away any rights he may have had in the song, but the agreement has never been produced, and the parties disagree about its content and effect. The District Court admitted a draft version of the missing agreement as a duplicate, and then granted defendants' motion for summary judgment without allowing Elliott to conduct discovery. We hold that the District Court abused its discretion in finding the draft admissible as a duplicate original under Federal Rule of Evidence 1003, but properly admitted the draft as "other evidence of the content" of the original under Rule 1004. We further hold that the District Court abused its discretion in denying Elliott's request to conduct discovery prior to the entry of summary judgment and erred in concluding that no genuine dispute of material fact existed based on the current record. We therefore **VACATE** the judgment and **REMAND** for further proceedings.

---

[*] Senior Circuit Judge Rosemary S. Pooler, originally a member of this panel, passed away on August 10, 2023. The two remaining members of the panel, who are in agreement, have determined the matter. See 28 U.S.C. §46(d); 2d Cir. IOP E(b); United States v. Desimone, 140 F.3d 457, 458-59 (2d Cir. 1998).

ALFRED J. (AJ) FLUEHR, Francis Alexander, LLC, Media, PA, *for Plaintiff-Appellant.*

ELEANOR M. LACKMAN, Mitchell Silberberg & Knupp LLP, New York, NY, *for Defendants-Appellees.*

SARAH A. L. MERRIAM, *Circuit Judge*:

Plaintiff-appellant Eric A. Elliott alleges that he co-created the song "All the Way Up" (the "Song") with defendant-appellee Shandel Green, but that he has not been properly credited or compensated for his contribution. He filed this action in the United States District Court for the Southern District of New York (Buchwald, *J.*), asserting claims under the Copyright Act, 17 U.S.C. §101, et seq., as well as various tort claims. Defendants-appellees maintain that Elliott signed an agreement assigning away any rights he may have had in the Song. Elliott agrees that he signed a document, but the signed agreement has never been produced, and the parties disagree about its content and effect. The District Court accepted defendants' contention that the signed agreement was identical to a draft version (the "Draft") produced by defendants and found the Draft admissible as a duplicate. It then granted defendants' motion for summary judgment without allowing Elliott to conduct discovery, holding that this was among the "rarest of cases" in which summary judgment before discovery was

3

appropriate. Hellstrom v. U.S. Dep't of Veterans Affs., 201 F.3d 94, 97 (2d Cir. 2000). We disagree. We hold that the District Court abused its discretion in finding the Draft admissible as a duplicate original under Federal Rule of Evidence 1003, but properly admitted the Draft as "other evidence of the content" of the original under Rule 1004. We further hold that the District Court abused its discretion in denying Elliott's request to conduct discovery prior to the entry of summary judgment and erred in concluding that no genuine dispute of material fact existed based on the current record. We therefore **VACATE** the judgment and **REMAND** for further proceedings.

## I. BACKGROUND

The parties agree on certain facts, but many are disputed. The background discussed below is based on the parties' submissions at summary judgment, as well as on the verified complaint. See Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit" described in Rule 56(c)(4). (citation and quotation marks omitted)).

Elliott alleges that he "co-created the song" that became "the hit single 'All

4

the Way Up'" with defendant-appellee Shandel Green in 2015. App'x at 167.

Green then collaborated with others, including defendant-appellee Joseph

Cartagena,[1] to prepare the final version of the Song that was released on March 2,

2016, as performed principally by Cartagena.[2] Id.

Elliott asserts, and Cartagena does not deny, that he and Cartagena "spoke

several times between March 4, 2016, and March 6, 2016," about the Song. Id. at

540.[3] Elliott alleges that, during these telephonic discussions, Cartagena

acknowledged that "Elliott was a co-author of 'All the Way Up' and should get

credit." Id. at 173. According to Elliott, Cartagena

> told Elliott that (1) he would get him "some bread" up front (which
> Plaintiff understood to be a significant sum [of money] for a song that
> was becoming a hit single) for his contributions to the song[,] (2) more
> bread later as the song produced income, (3) that they would begin
> working together because Mr. Elliot was hot and "in the zone," and
> (4) that Elliot needed to realize that he would have an 'incredible

[1] Cartagena is known as "Fat Joe" in the music industry. He is often referred to by that name in the parties' submissions.

[2] Elliott brought claims against a number of defendants, all of whom he contends had some involvement with the creation, release, or marketing of the Song. Some defendants never appeared in the District Court action; some were never properly served; some appeared but did not file dispositive motions. The District Court nonetheless entered final judgment in favor of all defendants.

[3] Cartagena did not contest the substance of this statement at summary judgment; rather, he responded to it in his Rule 56 statement solely by asserting it was "[i]mmaterial." App'x at 540.

relationship' with Fat Joe going forward if he respected Fat Joe. Id. Elliott alleges that on March 14, 2016, Cartagena "called [him] and told him to come to an address, but did not say why. Mr. Elliott had assumed it was an office for an attorney, and only when [he] was almost there did he realize that Fat Joe had actually picked an IHOP in Miami Beach" as a meeting place. Id. at 174.

The parties agree that at the IHOP meeting Cartagena gave Elliott a $5,000 check and "put a piece of paper in front of" Elliott for Elliott to sign, which he did. Id. at 541. Elliott maintains that the piece of paper "seemed to state that [he] was going to be compensated and credited as a writer" and that Cartagena told him that the document "essentially memorialized [Cartagena's] representations about getting 'some bread' up front, more later, and working together." Id. at 328-29, 176. Elliott further maintains that Cartagena also reiterated his earlier promises, specifically that Elliott "was going to get some money then, more later, that [they] were going to be working together in the studio, and that [Cartagena] was going to promote [Elliott] as an artist and also [Elliott's] songs." Id. at 484-85. Elliott asserts that Cartagena told him that the "piece of paper" that Elliott signed at the meeting was "supposed to protect Elliott's rights and secure Fat Joe and [Elliott's] future relationship." Id. at 176. Elliott contends that Cartagena left the

6

meeting with the signed document and did not provide Elliott with a copy.

Defendants[4] produced a draft version of the "piece of paper," claiming it is identical in substance to the version that Elliott signed. The Draft, which is riddled with errors, purports to assign all of Elliott's rights in the Song to an entity called R4 So Valid, LLC.[5]

The Draft states that Elliott[6] "irrevocably grants to R4 So Valid, LLC . . . any and all rights of ownership or any other rights in and to" the Song in exchange "[f]or good and valuable consideration, the receipt and sufficiency of which Elliot hereby acknowledges." Id. at 323. The Draft states that the consideration as "set forth above" is the "full and complete consideration for all of Elliot's services" and that "no additional compensation (including mechanical

---

[4] We refer to defendants-appellees simply as "defendants" throughout, but, as noted, numerous defendants were named in this action that did not participate in the proceedings below and did not move for summary judgment.

[5] At oral argument, defendants' counsel stated that R4 So Valid, LLC is a publishing company affiliated with Cartagena. Plaintiff's counsel stated that he had not received any information regarding R4 So Valid, LLC prior to oral argument, and the record provides no such information.

[6] The Draft spells Elliott's name wrong, as "Elliot," throughout. Defendants-appellees' other submissions often misspell the name as well. Where such an error occurs in quoted language, we have reproduced it without a "sic" notation or brackets, for ease of reading.

royalty or any other payments) will be due to Elliot." Id. The Draft does not describe what the purported consideration was.

The Draft also contains a merger clause: "This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof and cannot be changed or terminated except by an instrument signed by the parties hereto." Id.

Cartagena's former attorney, Erica Moreira, submitted a declaration saying that she prepared the Draft for Cartagena to present to Elliott. Cartagena submitted a declaration stating: "I did not modify the Agreement that Ms. Moreira prepared, and Mr. Elliot did not make any changes to the Agreement. I presented the Agreement in the form received from Ms. Moreira and Mr. Elliott signed it in the form in which it was presented." Id. at 314. Defendants admit, however, that the Draft is "not a copy of the executed Agreement." Id. at 545.

Elliott maintains that the Draft "does not comport with [his] recollection of the document [he] signed" and that the paper he signed "seemed to state that [he] was going to be compensated and credited as a writer." Id. at 485.

Elliott brought claims pursuant to the Copyright Act as well as various tort claims, seeking damages and credit as an author of the Song. Defendants sought

leave to file a motion to dismiss, arguing that Elliott had assigned away any rights he had in the Song. In advance of a pre-motion conference, the District Court ordered the parties to file any versions of the agreement in their possession. In response, defendants submitted the declarations of Cartagena and Moreira, the latter of which attached the Draft. At the pre-motion conference, the District Court expressed its view that if the Draft represented an enforceable contract, that would dispose of the case. The District Court viewed the validity of any assignment of rights as a threshold issue, indicating that it could be addressed without discovery. Because the parties sought to rely on affidavits, the District Court suggested that a dispositive motion directed to the effect of the alleged agreement "maybe should be styled summary judgment." Spec. App'x. at 59. Elliott's counsel objected to this approach, arguing that summary judgment before Elliott was permitted to conduct discovery would be prejudicial. In particular, Elliott's counsel argued that at least limited discovery of the issues surrounding the alleged agreement, including depositions of people such as Moreira, was necessary. The District Court observed that discovery is not required before summary judgment in every case, and indicated that it was not persuaded that pre-motion discovery was necessary in this case.

Defendants then moved for summary judgment. Elliott opposed the motion on substantive grounds, and once again argued that he needed discovery to properly respond to the motion. In support of his request for discovery, Elliott's counsel submitted a declaration under Federal Rule of Civil Procedure 56(d)[7] describing the discovery Elliott sought and the reasons for seeking it. The declaration of counsel described eighteen categories of evidence Elliott sought, indicated how each type of evidence would be obtained, and explained how the expected evidence would demonstrate genuine disputes of material fact sufficient to defeat summary judgment.

In a July 2020 ruling, the District Court concluded that the Draft was "admissible under Federal Rule of Evidence 1003 as a duplicate of the 'piece of paper' that was presented to plaintiff at the meeting." Elliott v. Cartagena (Elliott I), No. 1:19CV01998(NRB), 2020 WL 4432450, at *3 (S.D.N.Y. July 31, 2020). It rejected the Rule 56(d) declaration of Elliott's counsel, finding it amounted to "mere speculation that the Draft Agreement might not be an authentic duplicate

---

[7] The subsection now known as Rule 56(d) was numbered as Rule 56(f) until the 2010 Amendments. See Fed. R. Civ. P. 56(d) advisory committee's note to 2010 amendment ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."). The parties' papers sometimes refer to Rule 56(f).

10

of the 'piece of paper,' which is insufficient to raise a genuine question about authenticity under Rule 1003." Id. The District Court nonetheless denied defendants' motion for summary judgment without prejudice, concluding "that defendants ha[d] failed to fully satisfy their burden to invoke Rule 1004(a)," id. at *5, which provides, as relevant here, that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a). The District Court granted defendants leave to renew the motion at a later date if they were able to "meet the requirements of Rule 1004(a)." Elliott I, 2020 WL 4432450, at *5.

Over a period of months, defendants attempted to locate the executed agreement, during which time the District Court granted defendants' request to stay all other activity in the case, including any discovery sought by Elliott. See Elliott v. Cartagena (Elliott II), 578 F. Supp. 3d 421, 430 (S.D.N.Y. 2022). As part of that effort, defendants filed four separate letters updating the District Court on their progress and moved for permission to serve a subpoena by alternative means on a former associate of Cartagena's, whom Cartagena believed might have possessed the signed agreement.

11

Defendants then filed a renewed motion for summary judgment, which the District Court granted. The District Court adhered to its prior finding that the Draft was admissible as a duplicate under Rule 1003. It further found that the executed agreement was lost, not through the bad faith of defendants, or that it was outside the reach of the Court. See id. at 430-31. It then concluded that the Draft was admissible as other evidence of the original under Rule 1004 and that the assignment of rights in the agreement defeated all of Elliott's claims against all defendants. See id. at 432-35. The entire case was dismissed, including the claims against many defendants who had never moved for summary judgment. See id. at 435.

In its summary judgment ruling, the District Court denied Elliott's request for discovery in a cursory fashion, stating: "[I]t is clear that a signed copy [of the agreement] cannot be located. Plaintiff does not suggest otherwise. Thus, this is one of the 'rarest of cases' in which summary judgment is appropriate despite the lack of formal discovery." Id. at 428 (quoting Hellstrom, 201 F.3d at 97). Elliott appeals, challenging the District Court's admission of the Draft into evidence under Rules 1003 and 1004, the denial of discovery before summary judgment, and the ultimate grant of summary judgment.

## II. DISCUSSION

**A.** **The Draft was not admissible as a duplicate original under Rule 1003, but it was admissible as "other evidence" of the content of the agreement under Rule 1004.**

Rule 1002, known as the best evidence rule, states that "[a]n original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Rules 1003 and 1004 "provide[] otherwise." Id.

The District Court determined that the Draft was admissible as a duplicate under Rule 1003 and as other evidence of the original under Rule 1004. We review the District Court's admission of the Draft under Rules 1003 and 1004, like all evidentiary rulings, for abuse of discretion. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." United States v. Zhong, 26 F.4th 536, 551 (2d Cir. 2022) (citation and quotation marks omitted).

### 1. Federal Rule of Evidence 1003

Rule 1003 states: "A duplicate is admissible to the same extent as the

original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. A duplicate is defined as "a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Fed. R. Evid. 1001(e). Elliott, as the party opposing the admission of the Draft, has the burden of "demonstrating a genuine issue as to . . . the trustworthiness of the duplicate, or as to the fairness of substituting the duplicate for the original." United States v. Chang An-Lo, 851 F.2d 547, 557 (2d Cir. 1988) (citation and quotation marks omitted).

Cartagena submitted a sworn statement asserting that the Draft is identical in substance to the "piece of paper" that Elliott signed. The statement explained that Cartagena received "an email from Ms. Moreira," his attorney at the time, "attaching a short agreement." App'x at 314. Cartagena stated that he then "printed the Agreement in the concierge of the complex where [he lived] and brought it with" him to the IHOP meeting. Id. Moreira also submitted a declaration stating that she had "drafted and sent" a "work for hire agreement" to Cartagena after Cartagena contacted her regarding Elliott's claims related to the Song. Id. at 318. The Draft was attached to this declaration.

14

Relying on these declarations, the District Court found the evidence "sufficient to establish the authenticity of the Draft Agreement as a duplicate of the 'piece of paper' that was presented to plaintiff." Elliott I, 2020 WL 4432450, at *3. This was an abuse of discretion.

Elliott has demonstrated genuine issues as to the trustworthiness of the Draft as a purported duplicate of the agreement that was actually signed. See Chang An-Lo, 851 F.2d at 557. Elliott submitted sworn testimony indicating that the Draft produced is not identical to the version he signed. Elliott squarely stated that the Draft did "not comport with [his] recollection of the document [he] signed." App'x at 485. Elliott averred that the document he signed "seemed to state that [he] was going to be compensated and credited as a writer," id., which differs from the assignment of rights contemplated in the Draft.[8] Cartagena submitted a sworn statement contradicting this claim, asserting that he did not alter the Draft between the time he received it from Moreira and the IHOP meeting three days later. But it was not appropriate for the District Court to resolve this factual dispute against Elliott, the non-moving party, at the summary judgment stage, particularly without the benefit of discovery.

---

[8] Elliott's limited recollection of the details is not surprising given his brief exposure to the document.

15

Under Rule 1003, a duplicate is admissible "to the same extent as the original," Fed. R. Evid. 1003 – that is, it will be treated as direct evidence of the original – only "if no genuine issue exists as to authenticity," Fed. R. Evid. 1003 advisory committee's note to 1972 proposed rules. Elliott's sworn statements are sufficient to meet his burden of "demonstrating a genuine issue as to . . . the trustworthiness of the" Draft as an accurate reproduction of the original.[9] Chang An-Lo, 851 F.2d at 557; see also Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 371 (2d Cir. 2003) (finding genuine issue as to the trustworthiness of alleged duplicate based, in part, on a party's affidavit); Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P., 614 F. Supp. 2d 481, 485 (S.D.N.Y. 2009) (finding admission as a duplicate improper where a party's testimony "raise[d] genuine questions as to the authenticity of both" the original and the purported photocopy).[10]

The District Court therefore abused its discretion in admitting the Draft as

---

[9] It is also notable that the Draft is titled: "WORK FOR HIRE – ASSIGNMENT OF COPYRIGHT," App'x at 323, but no party argues, and the record does not support, that Elliott's contributions were made as part of any work for hire arrangement.

[10] See also RCB Equities #£3, LLC v. Martin, 632 F. App'x 663, 665-66 (2d Cir. 2015) (summary order) (finding admission of duplicate proper, in part because opposing counsel "never pointed to anything indicating that the duplicate was somehow different than the original[]").

a duplicate under Rule 1003, on the record as it currently stands.

2. Federal Rule of Evidence 1004

The District Court also admitted the Draft as secondary evidence of the original under Federal Rule of Evidence 1004. The rule provides, as relevant here: "An original is not required and other evidence of the content of a writing . . . is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith; [or] (b) an original cannot be obtained by any available judicial process." Fed. R. Evid. 1004(a), (b). A party seeking to rely on "other evidence" may do so "only where the [party] demonstrates that it has made a diligent but unsuccessful search and inquiry for the missing" document. Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002) (citation and quotation marks omitted). Whether the party's search was sufficiently diligent is to be decided by the court. See id. at 92.

A document admitted under Rule 1003 is treated differently than a document admitted under Rule 1004. A duplicate admitted under Rule 1003 "is admissible to the same extent as the original." Fed. R. Evid. 1003. As such, it is treated as interchangeable with the original, subject to the discretion of the finder of fact. That is because such a duplicate is admissible only when there is no

17

genuine question about the authenticity of both the original and the duplicate. By contrast, a document admitted under Rule 1004 is admissible only as "other evidence" of the original because admission under Rule 1004 does not require such high guarantees of authenticity. The document, rather than being interchangeable with the original, may be probative of the contents of the missing document, to a greater or lesser degree, depending on its persuasive power.

Defendants renewed their motion for summary judgment on April 12, 2021, arguing that the executed agreement was lost and that the Draft's contents precluded all of Elliott's claims. The District Court found that "defendants ha[d] established the loss of the document," that the signed agreement was beyond the reach of the Court, and thus "that the requirements of Rule 1004(a) and (b) ha[d] been satisfied." Elliott II, 578 F. Supp. 3d at 430-31. The Court then admitted the Draft as other evidence of the original. This was not an abuse of discretion, under either Rule 1004(a) or 1004(b).

The District Court based its admission of the Draft under Rule 1004(a) on its finding that the original was lost. We discern no clear error in that factual

18

finding.[11] "Loss or destruction may sometimes be provable by direct evidence, such as testimony from a witness who destroyed the document. But more often the only available evidence will be circumstantial, usually taking the form of testimony that an appropriate search for the document has been made without locating it." 2 McCormick on Evidence §237 (8th ed. 2022) (footnote omitted).

Cartagena submitted sworn testimony stating that he could not locate the signed agreement: "I looked in my home, my personal belongings, and asked the people in my circle at the time to see if they had the signed copy or any information as to its whereabouts." App'x at 314. Cartagena's declaration also stated that he "believe[d] [he] may have provided the document to [his] then-manager, Mr. Elis Pacheco." Id. Moreira, who created the Draft for Cartagena, also submitted a declaration stating that she "never received a signed copy of the Agreement," and that "it was typical for Mr. Pacheco to keep track of Mr. Cartagena's documents." Id. at 318. Both declarants represented that Pacheco had reported he was unable to locate a signed copy of the agreement. See id. at 314, 318.

---

[11] Elliott also contests the District Court's finding that there was no evidence of bad faith in such loss, but based on this record, we cannot say that the District Court clearly erred in this predicate factual finding, either.

Elliott argues that defendants failed to adequately explain why the original had not been located. But all parties agree that an original existed (whether or not the Draft accurately represents its content) because Elliott signed something at the IHOP. And, as the District Court noted, Cartagena searched for the original and asked people in his circle at the time to look for the document, to no avail. Cartagena and Moreira both believed that the document might have been given to Pacheco. Defendants "embarked on a months-long effort to contact Pacheco" and "issued four subpoenas and made nineteen unsuccessful attempts to serve Pacheco." Elliott II, 578 F. Supp. 3d at 430. Based on this record, we hold that the District Court did not clearly err in finding that defendants had conducted "a diligent but unsuccessful search and inquiry for the missing" document, and that it was lost. Burt Rigid Box, 302 F.3d at 91 (citation and quotation marks omitted); see also 2 McCormick on Evidence §237 (8th ed. 2022).

Nor did the District Court err in finding, in the alternative, that the Draft was admissible under Rule 1004(b) because the original could not be obtained by any available judicial process. The District Court properly found that "if the document [was] within the possession of Pacheco, it [was] beyond the reach of the Court." Elliott II, 578 F. Supp. 3d at 431. Because there was "no other judicial

recourse available," the original was rendered "as inaccessible as though it had been lost or destroyed." Id. (citation and quotation marks omitted).

**B.      Summary judgment without discovery was improper in this case.**

Elliott also challenges the District Court's denial of his request to conduct discovery before proceeding to consideration of defendants' summary judgment motion. We review the denial of Rule 56(d) discovery for abuse of discretion. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003).

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Hellstrom, 201 F.3d at 97. Indeed, "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986). When a party has not had any opportunity for discovery, summary judgment is generally premature. See Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996).

"[W]hen a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until

the party has had the opportunity to take discovery and rebut the motion." <u>Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.</u>, 271 F.3d 374, 386 (2d Cir. 2001). This Court articulated a test in <u>Meloff v. New York Life Insurance Co.</u>, 51 F.3d 372 (2d Cir. 1995), to assess requests pursuant to Rule 56(d):

> A party resisting summary judgment on the ground that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), showing: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."

<u>Lunts v. Rochester City Sch. Dist.</u>, 515 F. App'x 11, 13 (2d Cir. 2013) (summary order) (quoting <u>Meloff</u>, 51 F.3d at 375).

Elliott's counsel submitted an affidavit in compliance with Rule 56(d) showing "for specified reasons" that Elliott could not "present facts essential to justify [his] opposition" without discovery. Fed. R. Civ. P. 56(d); <u>see</u> App'x at 436-49. The District Court denied Elliott's request solely on the basis of the loss of the original signed document: "[I]t is clear that a signed copy [of the agreement] cannot be located. Plaintiff does not suggest otherwise. Thus, this is one of the 'rarest of cases' in which summary judgment is appropriate despite the lack of formal discovery." <u>Elliott II</u>, 578 F. Supp. 3d at 428 (quoting <u>Hellstrom</u>, 201 F.3d

22

at 97).

In the context of this case, the declaration of Elliott's counsel satisfies the Meloff test.[12] It identifies the facts Elliott seeks and how those facts could demonstrate a genuine dispute of material fact. The declaration outlines eighteen categories of discovery and topics to be pursued and describes what tools Elliott would use to pursue them. It also indicates the relevance of each category and the likelihood that the evidence to be obtained would give rise to a genuine dispute of material fact. See Ass'n of Car Wash Owners, Inc. v. City of New York, 911 F.3d 74, 84 (2d Cir. 2018).

For instance, the declaration seeks records, if any, of Cartagena's transmission of the Draft for printing at his complex's concierge. It also seeks information concerning the relationship between Cartagena and R4 So Valid, LLC, the entity to which Elliott's rights to the Song were purportedly assigned. Further, it seeks information concerning whether the check Elliott received was intended by the parties to comprise all of the consideration, which the Draft does not define. We do not address whether all of the information sought in the

---

[12] We do not analyze Meloff factors (3) and (4) because Elliott was not afforded any discovery at all and there is no indication that Elliott could have obtained the requested information through other means.

23

declaration would ultimately be discoverable under the applicable rules, but we do not share the District Court's view that the declaration presents nothing more than "mere speculation." Elliott I, 2020 WL 4432450, at *3; see also Miller, 321 F.3d at 303 ("[P]laintiff cannot be faulted for failing to advise the district court precisely what information he might learn during discovery given that the facts sought were exclusively within defendants' possession and that he had no previous opportunity to develop the record through discovery.").

The matter of Seneca Beverage Corp. v. Healthnow New York, Inc., 200 F. App'x 25 (2d Cir. 2006) (summary order), is illustrative. The Seneca Beverage Court reversed a grant of pre-discovery summary judgment, finding that plaintiff had "met its burden under Rule 56(f)" to provide affidavits that "point to potential facts that might raise an issue of material fact, that it has been unable to obtain without discovery." 200 F. App'x at 28. The plaintiff in that case argued that oral communications with the defendant had modified a written agreement. See id. This Court reasoned:

> Further discovery as to [defendant's] recollection of the negotiations may clarify the facts of this case, may refresh the recollections of Seneca's employees, and may lead to the discovery of relevant statements. Additionally, further discovery as to [defendant's] subsequent actions under the [agreement] -- whether known to [plaintiff] at the time or not -- may illuminate the parties'

24

contemporaneous understanding of that contract, and any surrounding negotiations.

Id.[13]

Likewise, "[f]urther discovery as to [Cartagena's] recollection of the [IHOP meeting and the 'piece of paper'] may clarify the facts of this case, may refresh the recollections of [Cartagena and his associates], and may lead to the discovery of relevant" evidence. Id. (emphasis added). Just as in Seneca Beverage, the District Court here abused its discretion when it granted defendants' motion for summary judgment without allowing Elliott to conduct discovery.

## C.     **Summary judgment was improper because there are genuine disputes of material fact.**

Finally, Elliott challenges the District Court's grant of summary judgment on the merits. Although we have already concluded that the District Court erred by considering defendants' summary judgment motion without permitting Elliott to conduct discovery, we address this issue because it may arise on

---

[13] Some District Courts have found ambiguity surrounding an alleged agreement to be a sufficient reason to deny a pre-discovery motion for summary judgment. See Murphy v. Murphy, No. 20CV02388(AMD), 2022 WL 1321588, at *2 (E.D.N.Y. May 3, 2022) (denying pre-discovery motion for summary judgment because parties disagreed as to whether purported contract was valid and whether it had been forged or altered); INTL FCStone Markets, LLC v. Agro Santino OOD, No. 20CV02658(JMF), 2021 WL 2354567, at *1 (S.D.N.Y. June 9, 2021) (denying pre-discovery motion for summary judgment to allow for "further factual development" surrounding a disputed agreement).

remand. We review the District Court's grant of summary judgment de novo, "constru[ing] the evidence in the light most favorable to the" non-moving party and "drawing all reasonable inferences and resolving all ambiguities in [his] favor." Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017) (citation and quotation marks omitted). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The District Court granted summary judgment to all defendants, finding that the Draft "not only resolves plaintiff's claims regarding ownership and authorship of 'All The Way Up,' but it also resolves plaintiff's remaining claims." Elliott II, 578 F. Supp. 3d at 432. We hold that summary judgment was improper because genuine disputes of material fact exist as to whether Elliott validly assigned all of his rights and as to whether any such assignment precludes all of Elliott's potential claims.

First, while Cartagena submitted evidence suggesting that the "piece of paper" that Elliott signed was identical to the Draft, Elliott submitted competing evidence suggesting that the "piece of paper" was not identical to the Draft. Elliott submitted two declarations: In one, he said that the Draft "does not

26

comport with [his] recollection of the document [he] signed," App'x at 485, and in both, he said that the document he signed "seemed to state that [he] was going to be compensated and credited as a writer," id. at 329, 485 – something the Draft does not do. Just as the parties' competing statements raised a genuine issue about the authenticity of the Draft as a duplicate for purposes of Rule 1003, they also raise a genuine dispute of material fact for purposes of summary judgment.

Burt Rigid Box offers a useful contrast. There, the parties were unable to locate an original insurance policy, and the plaintiff relied on other evidence under Rule 1004 to prove that it had policy coverage. See Burt Rigid Box, 302 F.3d at 91-93. This Court affirmed a grant of summary judgment in favor of the plaintiff due to "overwhelming" evidence that the plaintiff had coverage. Id. at 93. But the terms of the policy were not at issue; the parties had agreed that if the plaintiff had policy coverage, it "would have been [the insurer's] 'standard' or 'typical' policy." Id. Here, while Cartagena may properly introduce the Draft as evidence of the terms of the final, executed agreement, Elliott maintains in sworn testimony that the Draft does not accurately reflect the terms to which he agreed, and defendants' submissions are not so overwhelming as to establish the terms as a matter of law before discovery. It is ultimately for the finder of fact, when

27

determining the terms of the original agreement, to decide how much weight to accord the Draft in light of all the evidence. See United States v. Gerhart, 538 F.2d 807, 809 (8th Cir. 1976) ("[O]nce an enumerated condition of Rule 1004 is met, the proponent may prove the contents of a writing by any secondary evidence, subject to an attack by the opposing party not as to admissibility but to the weight to be given the evidence, with final determination left to the trier of fact.").

Second, Elliott established a genuine dispute of material fact regarding whether Cartagena promised him consideration in addition to the $5,000 check he received. Elliott submitted sworn testimony stating that Cartagena had "reassured" him "that [Elliott] was going to get some money then, more later, that [they] were going to be working together in the studio, and that [Cartagena] was going to promote [Elliott] as an artist and also [Elliott's] songs." App'x at 484-85. Elliott also averred: "At all points it was understood that I was going to be credited as an author and creator of the song." Id. at 485. Elliott's sworn testimony creates a genuine dispute of material fact as to whether Cartagena promised him consideration other than the $5,000 check for any assignment of rights.

Finally, even if the contents of the Draft accurately reflect the terms of the final agreement between the parties, the plain language of the Draft does not preclude Elliott from arguing that Cartagena promised him a $5,000 check <u>in addition to</u> promises of more money, credit as a co-writer, and future collaboration and promotion. While the Draft's merger clause states that the "Agreement contains the entire understanding of the parties," <u>id.</u> at 323, the Draft does not specify a crucial piece of that understanding: what the consideration was. It simply refers to "[t]he consideration set forth above" (with nothing set forth above). <u>Id.</u> Because the Draft does not define the consideration, the plain language of the Draft does not preclude Elliott from arguing that the "good and valuable consideration," <u>id.</u>, that he received at the IHOP meeting included the additional promises described above <u>and</u> the $5,000 check (the latter of which Cartagena and the District Court treat as the <u>only</u> consideration). <u>See</u> <u>DiMauro v. Martin</u>, 359 So. 3d 3, 8 (Fla. Dist. Ct. App. 2023) ("[A] promise, no matter how slight, can constitute sufficient consideration so long as a party agrees to do something that they are not bound to do." (quoting <u>Diaz v. Rood</u>,

29

851 So. 2d 843, 846 (Fla. Dist. Ct. App. 2003))).[14] Elliott's sworn testimony establishes a genuine dispute of material fact on this point.

## III. CONCLUSION

For the reasons stated, we **VACATE** the judgment and **REMAND** for further proceedings consistent with this opinion.

---

[14] The District Court applied Florida law to the substantive contract law questions, an approach that no party contests on appeal, because the Draft states that "the validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of Florida." App'x at 323. Assuming the parties agreed to such a provision, Florida law likely applies. "A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989). Under New York law, "[a]bsent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction." United States v. Moseley, 980 F.3d 9, 20 (2d Cir. 2020) (quoting Int'l Minerals & Res., S.A. v. Pappas, 96 F.3d 586, 592 (2d Cir. 1996)).