*RainMakers Partners LLC v. NewSpring Capital, LLC et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of April, two thousand twenty-four.

PRESENT:
> **GERARD E. LYNCH,**
> **ALISON J. NATHAN,**
> **SARAH A. L. MERRIAM,**
> *Circuit Judges.*

_____

RainMakers Partners LLC,

> *Plaintiff-Appellant,*

> v.                                                                                23-899

NewSpring Capital, LLC, NSH III
Management Company, LLC,

*Defendants-Appellees.*[*]

_____

**FOR PLAINTIFF-APPELLANT:** HAROLD F. BONACQUIST, LitigationSword LLC, New York, NY.

**FOR DEFENDANTS-APPELLEES:** PAUL K. LEARY, JR., Cozen O'Connor, Philadelphia, PA (Rachel Bevans Soloman, Cozen O'Connor, New York, NY, *on the brief*).

Appeal from a judgment of the United States District Court for the Southern District of New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

In this contract and trade secret dispute, Plaintiff-Appellant RainMakers

---

[*] In view of the parties' stipulation to dismiss the dispensable, non-diverse party from the action, as discussed further below, the Clerk of the Court is respectfully directed to amend the official caption in this case to conform with the caption above.

Partners LLC (RainMakers) appeals from a judgment of the United States District Court for the Southern District of New York (Ramos, *J.*) granting summary judgment to Defendants-Appellees. The district court held that Defendants-Appellees neither breached their agreement with RainMakers nor misappropriated any trade secrets RainMakers had shared with them under the agreement.

In 2019, RainMakers entered into an advisory agreement and subsequent addendum with Defendants-Appellees NSH Management Company, LLC and NewSpring Capital, LLC (together, NewSpring), under which RainMakers agreed to serve as a non-exclusive advisor to NewSpring in raising capital from investors for its funds. RainMakers shared a list of investors with whom it had connections, and agreed to render certain services to facilitate contacts between NewSpring and those investors. In return, NewSpring agreed to pay a retainer fee and, among other compensation, a placement fee. A placement fee would be due if one of the investors on the list shared by RainMakers made an investment in a NewSpring fund. The agreement also contained a confidentiality provision, under which NewSpring agreed to treat RainMakers's list of potential investors as

3

confidential, not to use the list for any purpose other than "in connection with services to be performed" under the advisory agreement, and not to introduce identified investors to third parties. Joint App'x at 31.

After efforts by RainMakers failed to lead to any investments, NewSpring worked with a different advisor, who facilitated an investment by Northleaf Capital Partners, Ltd. (Northleaf) in NewSpring Holdings, LLC. RainMakers had previously identified Northleaf as a potential investor. After Northleaf's investment, RainMakers requested that NewSpring pay it a placement fee. NewSpring refused. RainMakers then sued, claiming that NewSpring had breached the advisory agreement by failing to pay the fee. RainMakers also claimed that NewSpring had violated the confidentiality section of the agreement and misappropriated its investor list.

The district court granted partial summary judgment, followed by summary judgment, to NewSpring. It held that the advisory agreement required RainMakers to provide at least some services with respect to an investor in order to collect a placement fee based on that investor's investment and found that there was no genuine dispute over the fact that RainMakers did not provide *any* service

4

with respect to Northleaf. It further held that there was no evidence of any breach of the confidentiality agreement between the parties or of any misappropriation of any information shared by RainMakers with NewSpring. In granting summary judgment, the court also denied RainMakers's request for further discovery under Federal Rule of Civil Procedure 56(d). We assume the parties' familiarity with the remaining underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I.      Diversity Jurisdiction

As an initial matter, we conclude that we have subject matter jurisdiction over this case under 28 U.S.C. § 1332. The parties' supplemental briefing informed us that one Defendant-Appellee, NewSpring Holdings, LLC, is non-diverse with RainMakers, but the parties have stipulated to dismiss the action as to that dispensable party and no party suggests that any prejudice would result from the dismissal. We hereby enter the stipulation and dismiss NewSpring Holdings, LLC from this action in order to salvage federal jurisdiction over this suit, aware that this case has already proceeded to a final judgment in the district court. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989) (holding

that "the courts of appeals have the authority to dismiss a dispensable nondiverse party"); *United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 168, 170 (2d Cir. 2003) ("Once a district court has proceeded to final judgment, considerations of finality, efficiency, and economy become overwhelming, and federal courts must salvage jurisdiction where possible." (cleaned up)). With the dispensable non-diverse party dismissed, there is now complete diversity among the parties and we can proceed to the merits of the appeal.[1]

---

[1] In addition, the complaint in this case failed adequately to allege diversity of citizenship between RainMakers and the other remaining defendants. An LLC's citizenship is derived from the citizenship of its constituent members. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). But the complaint failed to identify the members of RainMakers and the defendant LLCs and to allege the citizenship of those members. Even when this Court initially requested information on the subject, the parties at first attempted to stipulate that RainMakers was diverse from NewSpring Capital, LLC and NSH III Management Company, LLC because the members of each of the latter are all residents of Pennsylvania, while the sole member of RainMakers is a resident of California.

But the citizenship of individual human beings is determined by whether they are citizens of the United States and the state where they are *domiciled*. *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id.* (citing *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). Domicile is established at birth and does not change unless a person takes up residence in a new place and intends to remain there. *See id.* Thus, intent to remain in a place distinguishes domicile from residence. For example, a student who was born and raised in New York but resides in California while attending college, but who intends to return to New York, or to move to another state, to take up permanent employment and make that state his home indefinitely, remains a citizen of New York.

## II. The Placement Fee

Reviewing the district court's grant of summary judgment *de novo* and viewing the evidence in the light most favorable to RainMakers, *see Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023), we agree that NewSpring did not breach the advisory agreement by failing to pay a placement fee. The agreement obligated RainMakers to provide services with respect to an investor in order to earn a placement fee. And without deciding what exact services are required in all circumstances, that conclusion is sufficient to resolve this claim, because RainMakers failed to call the district court's attention to any evidence to dispute NewSpring's assertion that RainMakers had provided no services. In the district court, at the summary judgment stage, NewSpring stated in its Local Rule 56.1 statement of undisputed facts that RainMakers "only facilitated introductions with three investors," not including Northleaf, and

---

Accordingly, we have held that a complaint that alleges that the plaintiff and defendant are merely residents of different states has failed adequately to allege the existence of diversity jurisdiction. *See Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (stating, as a threshold matter, that the plaintiffs alleged only their residency, which is "insufficient to establish domicile for jurisdictional purposes"). Eventually, the parties were able to attest that the citizenship of the members of RainMakers and the defendant LLCs other than NewSpring Holdings, LLC was indeed diverse.

7

supported this statement with citations to the record. Joint App'x at 164, ¶ 5; *see id.* at 153, ¶ 12; 160, ¶ 8. RainMakers disputed this assertion in its own Rule 56.1 statement, but it failed to cite any contrary record evidence or point to any evidence of any services it provided as to Northleaf. *See id.* at 200, ¶ 5. The district court relied on RainMakers's failure to comply with Rule 56.1 to deem NewSpring's assertion admitted, and it was therefore undisputed that RainMakers did not provide services to facilitate potential investment by Northleaf. RainMakers complains of the inequity of this procedure, pointing us belatedly to evidence in the record. But we have made clear that district courts may enforce compliance with Rule 56.1 in this way. *See T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (noting in this context that a court "is not required to consider what the parties fail to point out" (quotation marks omitted)).[2]

---

[2] Even if we were to look past RainMakers's failure to comply with Rule 56.1, we doubt that summary judgment would have been inappropriate. Although the record indicates that RainMakers provided some services with respect to Northleaf, the service it provided regarding one potential investment was not sufficient to earn it a placement fee from a later, unrelated investment. As evidenced by the record, RainMakers initiated contact with Northleaf regarding the initial fund raise that NewSpring was conducting, as required by section 3(a) of the advisory

8

Summary judgment is appropriate in a contract interpretation dispute "only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008). We review questions of contract interpretation *de novo*. *See Colon de Mejias v. Lamont*, 963 F.3d 196, 202 (2d Cir. 2020). The advisory agreement specifies that it is governed by New York law, under which we give words and phrases their "plain meaning" and construe the contract as a whole "so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quotation marks omitted). We are to avoid interpreting the agreement in a way that renders any clause "superfluous or meaningless." *Id.* (quotation marks omitted).

The advisory agreement concerns efforts by RainMakers to assist NewSpring in raising capital from certain investors. It defines a set of

agreement. But RainMakers's contact with Northleaf resulted in no investment in the initial fund, and no connection between NewSpring and RainMakers's contact at Northleaf. Indeed, Northleaf's ultimate investment in NewSpring came not from one of RainMakers's contacts, but because of a different advisor's relationship with different contacts at Northleaf.

9

"Introduced Investors" as those investors "identified by RainMakers and approved by [NewSpring] for introduction by RainMakers," an initial list of whom was attached to the agreement (the List of Introduced Investors). Joint App'x at 29; *see id.* at 36. At the center of the agreement are then two sections: section three, entitled "Services," and section four, entitled "Compensation." *See id.* at 29-30. Section three states:

> RainMakers shall provide the following services:
> a) Initiating contact with Introduced Investors;
> b) Facilitating discussions between [NewSpring] and Introduced Investors by coordinating and participating in conference calls and/or meetings between the parties[;]
> c) Counseling [NewSpring] as to the strategy and tactics for negotiating with Introduced Investors, and if requested by [NewSpring], participating in such negotiations[.]

*Id.* at 29. Section four then specifies the forms of compensation owed to RainMakers. NewSpring agreed to pay a nonrefundable retainer fee, payable in part upon completion of the agreement and in part sixty days later. It also agreed to pay a contingent placement fee, as follows:

> If one or a series of Transactions is consummated by [NewSpring] with one or several Introduced Investors, [NewSpring] shall pay RainMakers or shall cause RainMakers to be paid a placement fee (the "Placement Fee"), equal to two percent (2%) of the aggregate value of

10

the Consideration in the Transaction ("Transaction Value").

*Id.* at 30.

RainMakers zeroes in on the clause regarding the placement fee, arguing that nothing in its text makes payment contingent on RainMakers providing specific services. Rather, as RainMakers would read it, the placement fee is governed by a simple conditional: If a transaction with an investor on the List of Introduced Investors is consummated, then RainMakers is owed a fee. RainMakers is correct that the specific sentence regarding the placement fee does not refer to services, but it misses the forest for the trees. When we read the agreement as a whole, RainMakers's argument falls apart.

To begin, consider the structure of the agreement, with the section on compensation immediately following the section on services to be provided by RainMakers. The most natural reading of the agreement is that the compensation described in section four is compensation *for* the services listed in section three. In fact, RainMakers would read section three out of the agreement entirely. Under its interpretation, RainMakers could perform no services at all and still earn all the same forms of compensation outlined in the agreement; we could sever

11

section three from the agreement with no effect whatsoever on the parties' enforceable obligations. That cannot be the case. We decline to interpret the agreement in a way that renders its core section describing one party's obligations entirely superfluous. *See LaSalle Bank Nat'l Ass'n*, 424 F.3d at 206.

Context from other parts of the agreement reinforces our conclusion. RainMakers's interpretation would mean that, after sharing the initial list of Introduced Investors with NewSpring, it could simply sit back and await eventual placement fees. But NewSpring agreed to reimburse RainMakers for travel and other expenses "in connection with this Agreement," Joint App'x at 30, and RainMakers agreed to "perform its obligations hereunder in accordance with all applicable laws," *id.* at 31—both clauses suggest that the parties contemplated ongoing obligations on the part of RainMakers.

In addition, both parties acknowledge that the List of Introduced Investors provided pursuant to the agreement contained names of well-known potential investors. Those names, standing alone, were of little value to NewSpring. Rather, as RainMakers itself argues, Appellant's Br. at 35-36, it was RainMakers's ability to introduce NewSpring to its contacts at those investors, facilitate

12

discussions, and counsel NewSpring as to how to engage with them that was worth NewSpring's consideration.   In this context, RainMakers's interpretation—entitling RainMakers to placement fees indefinitely after sharing this list of widely known potential investors but doing no work to connect those investors with NewSpring—makes little sense.   Reading the agreement as a whole, we conclude that it required RainMakers to perform services in order to earn placement fees.[3]

That conclusion is enough to resolve RainMakers's claim because, as discussed above, RainMakers failed, on summary judgment, to properly controvert NewSpring's assertion that RainMakers had provided no services. Because the advisory agreement required RainMakers to perform services in order to earn a placement fee for an investment by an Introduced Investor and because RainMakers did not do so with regard to Northleaf, we affirm the grant of summary judgment to NewSpring on this claim.

---

[3] Because we find the agreement unambiguous, we do not reach the parties' arguments about the commercial reasonableness of particular fee arrangements in exclusive or non-exclusive advisory agreements.   *See Fundamental Long Term Care Holdings, LLC v. Cammeby's Funding LLC*, 20 N.Y.3d 438, 445 (2013).

## III. Breach of Confidentiality and Trade Secret Misappropriation

RainMakers's last two claims overlap significantly and can be resolved together. RainMakers claims that NewSpring violated the confidentiality section of the advisory agreement, by misusing the List of Introduced Investors to seek investments without RainMakers's involvement and by introducing such investors to third parties. It also claims that this misuse of the List of Introduced Investors constituted common law and statutory trade secret misappropriation. The district court granted summary judgment to NewSpring because it simply found no evidence of any breach or misappropriation. We agree.

On appeal, RainMakers claims to have "smoking gun" evidence, Appellant's Br. at 42, but in fact provides none. Crucially here, the advisory agreement clearly states that RainMakers is to serve "as a *non-exclusive* advisor" to NewSpring. Joint App'x at 29 (emphasis added). Thus, while engaging the services of RainMakers, NewSpring was entitled to work with other advisors in raising capital for its funds. In order to show a breach or trade secret misappropriation, then, it is not enough for RainMakers to point to communications between NewSpring and Introduced Investors. RainMakers

14

must demonstrate that NewSpring used the confidential List of Introduced Investors, rather than its own preexisting relationships or the help of a different advisor, to contact investors. Or it must point to evidence that NewSpring introduced Introduced Investors to third parties. *See id.* at 31.

All that RainMakers identifies in the record, though, is evidence that NewSpring engaged with Introduced Investors about potential investments: sales notes regarding communications between NewSpring and investors, and emails suggesting contact between NewSpring and one particular investor. RainMakers presents us with no evidence that NewSpring misused its confidential information in reaching out to those investors or that NewSpring introduced those investors to third parties.

With no evidence of any breach of the advisory agreement's confidentiality section or of any misuse of RainMakers's List of Introduced Investors, we easily affirm the grant of summary judgment to NewSpring. Like the district court, we dispose of RainMakers's trade secret misappropriation claim without having to decide whether RainMakers's List of Introduced Investors constitutes a trade secret.

15

## IV. Rule 51(d) Discovery

Finally, RainMakers argues that the district court should have denied summary judgment in order to allow RainMakers to pursue further discovery under Federal Rule of Civil Procedure 56(d). We review the denial of Rule 56(d) discovery for abuse of discretion and find none here. *See Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023). RainMakers was given a full and fair opportunity for discovery and fails to adequately explain why it was unable to obtain the discovery it now claims is necessary and why the district court abused its discretion in denying the request.

\*   \*   \*

We have considered RainMakers's remaining arguments and find them to be without merit. For the foregoing reasons, we enter the parties' stipulation to dismiss NewSpring Holdings, LLC from this action and **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

16